UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────────────

In re:

                                        CASE NO. 09-21150

TIMOTHY T. GRIFFIN
(f/d/b/a Griffin Advertising),

                    Debtor.          DECISION & ORDER
────────────────────────────────────

JAMES J. MORAN, as assignee
of MORAN & KUFTA, P.C.,

                    Plaintiffs,

          V.                            AP NO.  09-2031

TIMOTHY T. GRIFFIN
(f/d/b/a Griffin Advertising),

                    Defendant.
────────────────────────────────────


                    <u>BACKGROUND</u>

     On May 1, 2009, Timothy T. Griffin (the "Debtor") filed a
petition initiating a Chapter 7 case.  On the Schedules and
Statements required to be filed by Section 521 and Rule 7001, the
Debtor indicated that he was indebted to James J. Moran ("Moran"),
as assignee of Moran & Kufta, P.C. (the "P.C."), in the amount of
$225,000.00, by reason of a September 23, 2008 Stipulated Judgment
(the "State Court Judgment"), entered by the Supreme Court of the
State of New York, County of Monroe, in the amount of $213,074.00,
signed by the Hon. Thomas M. VanStrydonck, Supreme Court Justice
("Justice VanStrydonck").  The State Court Judgment was entered

against the Debtor, David K. Cahn ("Cahn") and the Debtor and Cahn, dba Griffin Advertising ("Advertising").

On June 2, 2009, Moran commenced an Adversary Proceeding (the "Discharge Proceeding"), which requested the Court determine that the amounts due on the State Court Judgment were nondischargeable. The Complaint in the Discharge Proceeding asserted that: (1) Advertising purchased media advertising services for the P.C.; (2) the Debtor, individually and on behalf of Advertising, "falsely billed and overcharged the plaintiff for advertising purchased on the television and radio stations and billboard space and in some instances charged plaintiffs for advertising which was not purchased[;]" and (3) the P.C. and Moran, as the assignee of the claim of the P.C., were damaged in the amount due on the State Court Judgment, which should be determined to be nondischargeable pursuant to Sections 523(a)(2)(A), 523(a)(4) and 523(a)(6).

In his Answer to the Complaint and at a pretrial conference conducted by the Court on July 28, 2009, the Debtor indicated that: (1) the State Court Judgment was based only upon the failure of Advertising to return the balance of a deposit for future services (the "Deposit") made by the P.C., and not for any alleged false billings or over billings; and (2) even if the P.C. had a claim for false billings the claim was time-barred by the New York State six-year Statute of Limitations, both when the Debtor's bankruptcy case

was filed and the Discharge Proceeding was commenced, since the alleged false billings and over billings occurred between 2000 and 2002.

On February 8, 2010, the Plaintiff made a Motion for Summary Judgment, which asserted that: (1) a chart of over billings, which was developed by the Plaintiff after discovery, indicated that there were $143,365.80 in over billings for the invoices from February 11, 2000 to March 8, 2002; (2) these over billings were nondischargeable, because they were fraudulent billings, pursuant to Section 523(a)(2)(A), and caused a willful and malicious injury to the P.C., pursuant to Section 523(a)(6); and (3) in February of 2002, the Debtor withdrew $50,000.00 from the Deposit, for which no services were ever provided, so the Court should find this amount nondischargeable as an embezzlement pursuant to Section 523(a)(4).

On February 12, 2010, the Debtor made a Motion for Summary Judgment, which asserted that: (1) the State Court Judgment was the culmination of a State Court action (the "State Court Action"), initiated by the P.C. on April 29, 2003, which originally sought damages only for claims occurring prior to December 1999; (2) on May 18, 2005, the P.C. filed an amended complaint (the "Amended Complaint") in the State Court Action which, at Paragraph #7, stated that, "[p]rior to May 2002, defendants falsely billed and overcharged plaintiff large sums of money for the services they

rendered...[,]" and, at Paragraph #9, stated that the, "[d]efendants' actions were done knowingly, willfully and intentionally...[;]" (3) on September 23, 2008, the State Court Judgment was entered, with the following attachments: (a) a copy of the Amended Complaint; (b) a June 24, 2002 letter to Infinity Broadcasting from Moran[1] (the "Moran Letter"); and (c) a transcript of the stipulation of settlement placed on the record before Justice VanStrydonck on August 13, 2008 (the "Settlement Transcript"); (4) Plaintiff had failed to fully respond to discovery demands made by the Debtor on October 5, 2009, and the Plaintiff had failed to fully establish its alleged over billings; (5) as a result of the failure to comply with the Debtor's discovery demands, should the Court not dismiss the Discharge Proceeding as being time-barred, it should require that the Plaintiff provide adequate information in response to those discovery requests; and (6) as a matter of law, the Plaintiff's claims in the Discharge Proceeding were time-barred by the applicable New York State Statute of Limitations, for the following reasons: (a) the amount of the State Court Judgment, $213,074.00, was the exact amount set forth in the Moran Letter, which

---

[1] Since this Court's decision on the competing Motions for Summary Judgment is primarily based upon its interpretation of the State Court Judgment, a copy of the Judgment with the Amended Complaint, Moran Letter and Settlement Transcript are attached to his Decision & Order.

**Page 4**

represented only the unreturned Deposit, not any over billings, since the P.C. did not even discover or assert such over billings until after the Moran Letter; (b) the alleged over billings took place from February 11, 2000 to March 8, 2002, more than six years prior to the filing of the Debtor's petition on May 1, 2009 and the complaint in the Discharge Proceeding, filed on June 2, 2009, so that the over billing claims are barred by the six-year New York State Statute of Limitations; and (c) there is no factual basis for the Plaintiff's Section 523(a)(4) claim for $50,000.00, and no facts were pled in the State Court Action or in the Discharge Proceeding that would support such a claim.

## DISCUSSION

**A.**   **Summary Judgment**

Fed.R.Civ.P. 56, incorporated by reference in Fed.R.Bankr.P. 7056, "provides that summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled, as a matter of law, to a judgment in its favor." In re Bennett Funding Group, Inc., 220 B.R. 743 (Bankr. N.D.N.Y. 1997), citing Federal Deposit Ins. Corp. v. Bernstein, 944 F.2d 101, 106 (2d Cir. 1991). The moving party has the initial burden of

demonstrating that there is no genuine issue of material fact for trial. In re Corcoran, 246 B.R. 152, 158 (Bankr. E.D.N.Y. 2000), citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Once the moving party has met its initial burden, "the non-movant must then come forward with sufficient evidence on the elements essential to its case to support a verdict in its favor." Corcoran, 246 B.R. at 158, citing Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986).

In deciding to grant or deny summary judgment, "the trial court must resolve all ambiguities and draw inferences in favor of the party against whom summary judgment is sought." Bennett Funding Group, Inc., 220 B.R. at 751, citing LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995); Corcoran, 246 B.R. at 156, citing Reyes v. Delta Dallas Alpha Corp., 199 F.3d 626, 627-28 (2d Cir. 1999). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997) citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586 (1986) (further citations omitted). Summary judgment is therefore inappropriate if any evidence exists in the record upon which a reasonable inference may be drawn in favor of the non-moving party. Id., citing Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

**Page 6**

B.   **The Debtor's Motion for Summary Judgment**

_____The State Court Judgment, even with its attached Amended Complaint, Moran Letter and Settlement Transcript, is not clear as to exactly which claims of the Plaintiff in the State Court Action were covered by the Judgment.

What is clear, however, is that:  (1) all of the parties and Justice VanStrydonck knew that the parties were settling the State Court Action, so that the parties could all proceed to the obvious next step, which was a determination of dischargeability by the Bankruptcy Court after the Debtor's inevitable filing; (2) the Debtor was liable, in breach of contract at a minimum, for the unreturned balance of the Deposit; (3) the State Court Judgment was specifically rendered "on the amended complaint," even though it was in the amount of $213,074.00, which was the amount of the unreturned Deposit as set forth in the Moran Letter; (4) while the over billings claim might be nondischargeable in a bankruptcy proceeding, the failure to return the balance of the Deposit would clearly not be nondischargeable; and (5) the Amended Complaint, attached to the State Court Judgment, was specifically a claim for only over billings or false billings, not for the failure to return the Deposit.

It is also clear that the Settlement Transcript is just as confusing and ambiguous as the State Court Judgment.

At the initial return date of the competing Motions for Summary Judgment, this Court suggested to the parties that they return to Justice VanStrydonck in the hopes that he would eliminate the confusion and ambiguity, and indicate which claims were and were not covered by the State Court Judgment. After the Debtor's counsel made a motion to reopen the State Court Action for such a clarification, Justice VanStrydonck, in an April 12, 2010 letter to the attorneys for the parties, indicated that he would not reopen the State Court Action and that, "[t]he parties purposefully crafted the language of settlement. They must now live by the agreement and look to the Bankruptcy Court to decide whether the judgment, as stipulated, is one which may be discharged."

The Debtor's Motion for Summary Judgment, which is based upon the assertion that the Plaintiff's claim for alleged over billings is barred by the New York State six-year Statute of Limitations, is in all respects denied, for the following reasons: (1) the State Court Judgment was specifically granted, "on the amended complaint," which only addressed over billings or false billings; (2) although the amount of the Judgment, $213,074.00, is exactly the balance of the unreturned Deposit, as set forth in the Moran Letter, this Court believes that Justice VanStrydonck permitted that amount as a maximum amount that could ultimately be determined to be nondischargeable, if there was sufficient proof of over

billings, and, perhaps, any other claim under Section 523, since there does not appear to be a dispute that the Defendants in the State Court Action were liable for that amount on a claim for breach of contract; and (3) by entering judgment "on the amended complaint," in this Court's opinion: (a) the cause of action set forth in the amended complaint, the alleged over billings, necessarily relates back to the commencement of the State Court Action, April 29, 2003, which was well within the six-year Statute of Limitations for the alleged over billings that took place from 2000 to 2002; and (b) Justice VanStrydonck would never have entered judgment on the Amended Complaint, even if that was part of the parties' stipulated settlement, if the claims asserted in the Amended Complaint were barred by the applicable Statute of Limitations.

C.    **The Plaintiff's Motion for Summary Judgment**

The Plaintiff's Motion for Summary Judgment is in all respects denied, for the following reasons: (1) Plaintiff has not complied with the Debtor's discovery demands and has not met its burden in demonstrating to the Court that notwithstanding its chart, that there were $143,365.80 in over billings that; (a) the Debtor knew of such over billings and participated in them; and (b) the Debtor withdrew $50,000.00 in February of 2002 from the Deposit.

**Page 9**

BK. 09-21150
AP. 09-2031

## CONCLUSION

The parties' Motions for Summary Judgment are each denied, and the Court will conduct a pretrial in this Discharge Proceeding on July 13, 2010 at 11:00 a.m.

**IT IS SO ORDERED.**

_____/s/_____
HON. JOHN C. NINFO, II
U.S. BANKRUPTCY JUDGE

**Dated:  June 18, 2010**

**Page 10**



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE    CIVIL TERM

2008 OCT -1 ⬚⬚ 9: 41

MORAN & Kufta, P.C.,

                Plaintiff,

-vs-

DAVID K. CAHN, Individually,
TIMOTHY T. GRIFFEN, Individually,
and DAVID K. CAHN and TIMOTHY T. GRIFFEN
d/b/a GRIFFEN ADVERTISING,
                Defendants.

**STIPULATED JUDGMENT**

Index # 2003-5208

    The parties hereto having appeared before me on August 13th, 2008, for a bench trial on plaintiff's amended complaint, and, the parties having reached an agreement to settle this matter and having placed their agreement and stipulation on the record in open court, as can be seen by the transcript thereof annexed hereto, and, in accordance with that stipulation and agreement, Court Exhibit 1 and Court Exhibit 2 are also attached hereto,

    NOW, upon motion of Scott D. Cannon, attorney for the plaintiff and upon the consent and stipulation of the attorneys for the defendants, John R. Parrinello for defendant David K. Cahn and William C. Reith for the defendant Timothy T. Griffen, it is hereby

    ORDERED, that judgment is rendered for the plaintiff on the amended complaint in the amount of $213,074, with interest.

Dated:  9/23/08

E    N    T    E    R

Hon. Thomas M. Van Strydonck,
Supreme Court Justice

SCOTT D. CANNON
ATTORNEY AT LAW
28 MAIN STREET
P.O. BOX 446
GENESEO, NEW YORK
14454

```
 1  SUPREME COURT OF THE STATE OF NEW YORK

 2  COUNTY OF MONROE  :  CIVIL TERM
    -------------------------------------X
 3
    MORAN & KUFTA,                    :   INDEX #2003-5208
 4
                     Plaintiff,       :
 5                                        Bench Trial/
              versus                  :   Stipulation of
 6                                        Settlement
    DAVID K. CAHN, Individually,      :
 7  TIMOTHY T. GRIFFIN, Individually,
    and DAVID CAHN and TIMOTHY GRIFFIN :
 8  d/b/a GRIFFIN ADVERTISING,
                     Defendants.
 9  -------------------------------------X

10                          Monroe County
                            Hall of Justice
11                          Rochester, New York
                            August 13, 2008
12
    B e f o r e:
13                      HONORABLE THOMAS M. VAN STRYDONCK
                             Supreme Court Justice
14
    A p p e a r a n c e s:
15
              SCOTT D. CANNON, ESQ.
16                 Attorney for the Plaintiffs
                   28 Main Street, P.O. Box 446
17                 Geneseo, New York  14454

18
              JOHN R. PARRINELLO, ESQ.
19                 Attorney for Defendant David Cahn
                   36 West Main Street, Suite 400
20                 Rochester, New York  14614

21
              WILLIAM C. RIETH, ESQ.
22                 Attorney for Defendant Timothy Griffin
                   19 West Main Street, Suite 600
23                 Rochester, New York 14614

24
    REPORTED BY:
25                      JANET M. TADDEO, RPR
                        Senior Court Reporter
```

```
 1
 2  (Open court:)
 3  (Plaintiff's Exhibit Nos. 1 through and including No. 168 -
 4    marked for identification.)
 5              THE COURT:  Everyone place their appearances on
 6          the record, please.
 7              MR. CANNON:  Good morning.  Scott D. Cannon, 28
 8          Main Street, Geneseo, for the plaintiff.
 9              THE COURT:  Mr. Moran for plaintiff, and Mr.
10          Moran is here on behalf of Moran & Kufta, correct?
11              MR. CANNON:  Yes, your Honor, but
12          interestingly, and I know the Court denied a motion
13          previously, Moran & Kufta assigned its interest in
14          this lawsuit to Mr. Moran.  Originally a motion was
15          made to amend the caption to have Mr. Moran
16          individually as the plaintiff in this action, but as
17          a matter of law, he is the holder of this cause of
18          action individually even though the plaintiff still
19          reads Moran & Kufta PC.
20              MR. PARRINELLO:  John R. Parrinello, 36 West
21          Main Street, Suite 400, Rochester, New York,
22          appearing for David Cahn, individually, and David
23          Cahn d/b/a Griffin Advertising with respect to index
24          number 03/5208.
25              MR. RIETH:  William C. Rieth, 19 West Main
```

Street, Suite 600, Rochester, New York, appearing on

behalf of Timothy T. Griffin, and that is in the

action Mr. Parrinello detailed.

THE COURT: And Mr. Cahn and Mr. Griffin are

also in the court, correct?

MR. PARRINELLO: Yes.

MR. RIETH: Yes.

THE COURT: We have had some preliminary

discussions about settling this matter.

Mr. Cannon.

MR. CANNON: If I may, your Honor?

THE COURT: Go right ahead.

MR. CANNON: Your Honor, the parties have on a

couple of occasions attempted to come to an

agreement concerning the language of any stipulation

of settlement, particularly how that language might

affect a subsequent effort to have the judgment

discharged in bankruptcy by the defendants.

It has been proposed that the plaintiff and the

defendant would stipulate and agree that judgment

would be entered on the complaint in the amount of

$213,074.

The defendants take issue with the amended

complaint that is before the Court and have certain

arguments that they believe have merit. The
plaintiff denies those arguments and denies that
they have merit, but nonetheless, my client would be
willing to settle this case in the amount of the
aforesaid based on the complaint, period, and with
no other conditions attached because he believes
this debt should not be discharged in bankruptcy.

And the defendants' attorneys have requested
that I place on the record my opinion with respect
to whether or not the complaint --

MR. PARRINELLO: Your Honor, to be specific,
the amended complaint.

THE COURT: The amended complaint, yes. On
whether or not the amended complaint -- I think it's
a nine paragraph complaint, is that correct?

MR. RIETH: Yes.

MR. PARRINELLO: It is, your Honor, and it is
verified.

THE COURT: -- verified, whether or not that
complaint satisfies the requirement of CPLR 3016(b)
with respect to its requirement that cause of action
for fraud or mistake be particularly set forth in
the complaint.

I'm prepared to indicate that in my opinion

this complaint does not satisfy CPLR 3016(b),
however, that determination by me should not be and
is not intended to be a finding that the parties did
not act, either side, fraudulently or otherwise as
described in 3016. It's merely a finding by me that
the complaint -- the amended complaint does not meet
that specific pleading requirement.

MR. CANNON: Would it be the Court's position
that your opinion was not intended to have res
judicata effect in the subsequent proceeding, your
Honor?

THE COURT: My opinion is res judicata with
respect to the amended complaint. That should not
be interpreted by any court of deciding the issue of
whether or not there was fraud between the parties
that have not been alleged in the complaint.

MR. CANNON: That would be acceptable to my
client, your Honor, if we were to resolve this
matter on those terms.

MR. RIETH: Based upon the Court's
clarification of the complaint, finding that there
is in this amended complaint the insufficient
allegation of fraud, understanding that it's not
determined whether there was or not, but on this

1

2    complaint it's not alleged, my client is willing to

3    stipulate to the entry of a judgment in the amount

4    of $213,074.

5         THE COURT:  Mr. Parrinello.

6         MR. PARRINELLO:  Your Honor, the amount --

7    first of all, to address the amount, the $213,074

8    amount is based on a letter dated June 24, 2002,

9    which was sent -- allegedly sent to Infinity

10   Broadcasting and is authored by James J. Moran, also

11   known as Joe Moran, the plaintiff, in this case.

12        THE COURT:  Okay.

13        MR. PARRINELLO:  Number two, the settlement in

14   this case does not represent any admission on the

15   part of the defendants one way or another concerning

16   their liability.

17        THE COURT:  All right.

18        MR. PARRINELLO:  Thirdly, the parties have

19   agreed that Mr. Cannon will draw a settlement

20   agreement which will be, of course, subject to

21   approval of the defendants' attorneys, and that the

22   judgment will also -- or the settlement agreement

23   and/or judgment, there will be attached to that the

24   verified amended complaint and a transcript of this

25   proceeding, your Honor.

THE COURT: That will be the Court's order.

MR. CANNON: That would be acceptable, your Honor. I think we talked in chambers about having the amended verified complaint marked.

THE COURT: You can take the letter Mr. Parrinello is talking about as well. Do you have the amended verified complaint with the verification with Mr. Moran on it?

MR. CANNON: I do, your Honor.

THE COURT: Why don't we have both of those marked as Court Exhibits, please.

MR. CANNON: Also, your Honor, before the reporter marks it, we would ask that the defendant be under an obligation to approve and return the proposed stipulation and judgment to me within ten days of the date they receive it.

THE COURT: You send the proposed order to me and I will give the defendants ten days from the date that you serve them with it to issue a complaint about it, otherwise, I will sign it and return it to you.

MR. CANNON: Very well.

MR. PARRINELLO: Ten days, including -- those are business days or including weekends?

1

2      THE COURT:  Business days.

3      MR. PARRINELLO:  Thank you, your Honor.

4 (Court Exhibit No. 1 - Infinity Broadcasting Letter and Court

5  Exhibit No. 2 - Verified Complaint -  marked for

6  identification and received in evidence.)

7      MR. PARRINELLO:  Your Honor, I would like to

8      place on the record on behalf of Mr. Rieth and

9      myself, Mr. Cahn, Mr. Griffin, our appreciation for

10      the Court's efforts in bringing this case to a

11      conclusion.

12      THE COURT:  Cases don't settle without the

13      willingness of the parties.  So the parties should

14      be commended for coming to this.  It would be a long

15      drawn out affair if we hadn't settled it.

16      MR. CANNON:  I would note, your Honor, I think

17      it's our intent this stipulation be effective as of

18      this point in time subject to the final judgment as

19      submitted and signed, and it's now 11:50 on August

20      13, 2008.

21      THE COURT:  Okay.

22      MR. CANNON:  Is that correct, Mr. Parrinello,

23  Mr. Rieth?

24      MR. PARRINELLO:  The time is correct.

25      MR. CANNON:  You don't agree that our

1

2     stipulation is intended to be effective as of --

3         THE COURT:  I'm not sure where you're going

4     with that, Mr. Cannon?

5         MR. PARRINELLO:  No, the stipulation would be

6     effective, your Honor, upon the agreement and

7     signature of the parties to the proposed settlement

8     agreement.  I don't want to --

9         THE COURT:  The stipulated settlement is on the

10     record and it's effective immediately.  The

11     paperwork that will memorialize it still has to be

12     prepared and submitted to the Court, but the

13     stipulation is effective today.  That is what we

14     stipulated to.

15         MR. CANNON:  Thank you, your Honor.

16         THE COURT:  And it is 11:50 approximately.

17         MR. PARRINELLO:  Thank you.

18         MR. CANNON:  Thank you, your Honor.

19         MR. RIETH:  Thank you.

20         THE COURT:  Mr. Cannon, I'm going to give

21     you -- or have you have Court Exhibits 1 and 2

22     incorporated with the proceeding of this transcript

23     and your proposed order.

24         MR. CANNON:  Yes, your Honor.

25         THE COURT:  Mr. Rieth and Mr. Parrinello, you

1

2   have the copies that Lisa has for you there and the

3   Court will keep a copy of Court Exhibit 1, which is

4   the letter on Moran & Kufta stationary, Infinity

5   Broadcasting and Court Exhibit 2 is a two page

6   complaint, the third page, which contains the

7   corporate verification signed by James J. Moran.

8        Thank you, everyone.

9                    * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, JANET M. TADDEO, RPR, hereby certify that I am an Official Court Reporter for the County of Monroe, State of New York;

That I reported in stenotype machine shorthand the proceedings held in Supreme Court, on the 13th day of August, 2008, before the Honorable Thomas Van Strydonck, Supreme Court Justice, in the matter of Moran & Kufta, Plaintiff versus David K. Cahn, Individually, Timothy T. Griffin, Individually, and David Cahn and Timothy Griffin d/b/a Griffin Advertising, Defendants.

That the foregoing transcript, pages numbered 2 through 10, is a true, accurate and correct record of those stenotype shorthand notes.


Janet M. Taddeo, RPR
Official Court Reporter


Dated at Rochester, New York
this 20th day of August, 2008.

# Moran&Kufta



EXHIBIT
Court #1
8-13-09

June 24, 2002

Infinity Broadcasting
1700 HSBC Plaza
Rochester, New York 14604
Attn: Billing Department

Dear Sir or Madam:

This letter concerns the open balances for Moran & Kufta on WCMF and WZNE. Apparently there are unpaid invoices on our account as old as September 2000 and as recent as March 2002 totaling $27,072.50.

Griffin Advertising, our former agency of record, has over $200,000 of Moran & Kufta money available to pay for advertising on your radio stations, as well as other media. We paid Griffin $360,000 in December 2001 to cover advertising on your stations and other media through June 2002. In April 2002 they returned $146,926 to us, indicating that they had spent some of the balance and were retaining some to pay for our advertising through June 2002. Consequently, they have $213,074 of our money. From what we can tell, they have not spent this on our advertising as they were supposed to. We don't know what they have done with it.

Contrary to what Griffin told you, we are not disputing the $27,072.00 owed to WCMF and WZNE. That should be paid in full by Griffin Advertising.

If you have any questions regarding payments due on this account, please contact Griffin Advertising, as they have over $200,000 of our money available to pay your bill.

Very truly yours,

James Moran

JJM/mew

p.c.   Griffin Advertising



EXHIBIT

Court #2

8-13-08

STATE OF NEW YORK
SUPREME COURT  :  COUNTY OF MONROE
_____

MORAN & KUFTA, P.C.

                    Plaintiff

         -vs-

DAVID K. CAHN, Individually, TIMOTHY T.
GRIFFIN, Individually, and DAVID CAHN and
TIMOTHY GRIFFIN d/b/a GRIFFIN
ADVERTISING

                    Defendants
_____

**AMENDED
VERIFIED
COMPLAINT**

Index No. 03-5208


May _18_, 2005


## VENUE

1.    Plaintiff is a New York State professional corporation with its principal place of
      business in Monroe County.

2.    Upon information and belief, the defendants, David K. Cahn (Mr. Cahn), and
      Timothy T. Griffin (Mr. Griffin) are residents of New York State.

3.    At all relevant times, Mr. Cahn and Mr. Griffin operated an advertising agency and
      conducted business as Griffin Advertising with its principal place of business in
      Rochester, New York.


## FACTS

4.    Prior to May 2002, Griffin Advertising contracted with plaintiff to be plaintiff's
      advertising agency and to perform advertising services for plaintiff, including, but not
      limited to, purchasing television and radio air time and billboard space for the display
      of advertisements for plaintiff.

5.  Plaintiff and Griffin Advertising agreed that Griffin Advertising would receive, as compensation for its services, 15% of the money it spent on behalf of plaintiff for advertising.

6.  This was the standard commission charged by advertising agencies in the Rochester and Monroe County area at the time.

7.  Prior to May 2002, defendants falsely billed and overcharged plaintiff large sums of money for the services they rendered as referred to in 4 above.

8.  As a result of the above, plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this case.

9.  Defendants' actions were done knowingly, willfully and intentionally and consequently punitive damages are sought in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this case.

KEITH R. LORD, ESQ.

By: _____
Attorney for Plaintiff
174 Main Street
Phelps, New York 14532
(315) 548-5060

2

## CORPORATE VERIFICATION

The undersigned, the President of Moran & Kufta, P.C. affirms that deponent has read the foregoing **Amended Verified Complaint** and knows the contents thereof, that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters deponent believes them to be true.

James Moran

Dated: May 11, 2005